UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER GOODVINE,

                Plaintiff,

v.                                              Case No. 22-cv-204-pp

BRIAN ANDERSON,

                Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 8)**

      Christopher Goodvine, who is incarcerated at the Columbia Correctional Institution and representing himself, filed this case alleging that Milwaukee County Jail officials violated his constitutional rights when he was confined at the jail. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on a failure-to-protect claim against defendant Brian Anderson based on allegations that Anderson failed to prevent an incarcerated individual named E. Girson from tossing a "milkshake cocktail" consisting of bodily fluids into the plaintiff's cell. Dkt. No. 7 at 10. The court did not allow the plaintiff to proceed on claims against the other defendants named in the complaint, and it dismissed former defendants Commander Duckert, Deputy Commander Dobson, Captain Briggs, CO Peterson, CO Ellison, Jane Doe Nurse and John Doe Jail Officials. Id. at 9-14. The plaintiff has filed a motion for reconsideration of the court's screening order in which he contends that the

1

complaint states a claim against Briggs, John Does 1-3, Ellison, Peterson and Jane Doe Nurse.[1] Dkt. No. 8 at 5.

Non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment, thereby bestowing sweeping authority upon the district court to reconsider a [summary judgment motion]"). "The 'standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b).'" Cheese Depot, Inc. v. Sirob Imports, Inc., No. 14 C 1727, 2019 WL 1505399, at *1 (N.D. Ill. Apr. 5, 2019) (quoting Morningware, Inc. v. Hearthware Home Prods., Inc., No. 09 C 4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011)).

To prevail on a Rule 59(e) motion to amend judgment, a party must "clearly establish" (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment. Harrington v. City of Chi., 433 F.3d 542, 546 (7th Cir. 2006). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Such motions are

---

[1] The plaintiff does not seek to revive his claims against Duckert and Dobson. Dkt. No. 8 at 6 n.1.

2

disfavored and should be 'rare.'" Acantha LLC v. DePuy Orthopaedics Inc., No. 15-C-1257, 2018 WL 2290715, at *1 (E.D. Wis. May 19, 2018) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)).

The plaintiff's complaint asserts five "causes of action," three of which are relevant to his motion for reconsideration. The screening order described the causes of action as follows:

> First, [the plaintiff] claims that defendants Duckert, Dobson, Briggs and John Doe officials 1-3 knew of Girson's propensity to assault other incarcerated persons with "milkshakes" but failed to take reasonable steps to abate the risk and instead turned a blind eye to it and even put him in a general population unit where he would have more opportunities to deploy "milkshakes." [Dkt. No. 1] at ¶22. The plaintiff claims that by placing Girson in a general population unit, these defendants failed to put into place measures to address the risk of serious harm to others, in violation of the Eighth and Fourteenth Amendments. Id.
>
> Second, the plaintiff claims that Anderson, Ellison and Peterson, who were charged with monitoring Girson for assaultive behavior during his dayroom time, failed to do so. Id. at ¶25. He claims that they knew Girson had an assaultive history and a propensity to assault others with bodily fluids but despite knowing that Girson had just attempted to urinate into a milk container, allowed him to roam the unit and assault the plaintiff, in violation of the Eighth and Fourteenth Amendments. Id.
>
> Third, the plaintiff claims that Jane Doe Nurse knew the plaintiff had suffered a "significant exposure to hazardous and potentially health-compromising bodily fluids," but rather than treat him she made jokes and inappropriate comments and refused to even triage him and take remedial measures to counter any potentially detrimental exposure to pathogens and other diseases. Id. at ¶27.

Dkt. No. 7 at 5-6.

At screening, the court did not allow the plaintiff to proceed on his first cause of action:

> In his first cause of action, the plaintiff claims that Duckert, Dobson, Briggs and John Doe Jail Officials 1-3 knew of Girson's propensity to deploy "milkshakes" but turned a blind eye to the risk and even placed him in general population where he would have more opportunities to deploy "milkshakes" on inmates. Dkt. No. 1 at 5. A government official is "liable [only] for his or her own misconduct." Kemp, 27 F.4th at 497-98 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)). To be liable, a supervisor must "know about the conduct and facilitate it, condone it, or turn a blind eye for fear of what they might see." Id. at 498 (quoting Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012)). Kingsley's objective-unreasonableness test applies to supervisory-liability claims. Id. ("[A]pplying Kingsley's objective-unreasonableness test, Kemp can defeat summary judgment only if the facts viewed in the light most favorable to him show that Standard and Ford acted purposefully, knowingly, or with reckless disregard for the consequences of hiring and retaining Burget despite his hearing disability").
>
> The plaintiff has not stated a failure-to-protect claim against Duckert, Dobson, Briggs and John Does 1-3 based on allegations that they housed Girson in general population despite knowing about Girson's propensity to deploy "milkshakes" on other incarcerated persons. While the plaintiff alleges that incarcerated persons with a history of assaulting other incarcerated persons, like Girson, "never" were housed in general population, the plaintiff does not explain how he knows this, or the source of his belief that this is so. Courts must accord prison and jail administrators wide-ranging deference in managing their institutions. See Thomas v. Ramos, 130 F.3d 754, 764 (7th Cir. 1997) (quoting Bell v. Wolfish, 441 U.S. 520, 547-48 (1979)). The plaintiff also alleges that, despite the fact that Girson had been placed in a general population unit, given his assaultive nature restrictions had been placed on Girson: he was allowed out of his cell for only one hour a day during which time he did not have contact with other incarcerated persons and all other incarcerated persons were required to be locked in their cells while Girson was out of his. The plaintiff alleges that, because Girson assaulted him, these restrictions were ineffective. But if staff had complied with the restrictions, Girson would not have been able to return to his cell to retrieve the "milkshake" and go to the plaintiff's cell to deploy it. The plaintiff has not stated a claim against

4

Duckert, Dobson, Briggs and John Does 1-3 for placing Girson in general population.

Dkt. No. 7 at 9-10.

In his motion for reconsideration, the plaintiff contends that the court erred in dismissing his first cause of action against Briggs and John Doe Jail Officials 1-3. Dkt. No. 8 at 6. The plaintiff contends that he was not required to "explain how he knows" Girson should not have been housed among general population incarcerated individuals because, at the pleading stage, he is required only to give a short and plain statement of the claim showing that he is entitled to relief. Id. The plaintiff also states that his failure-to-protect claim is not predicated on Girson's being housed in general population but is rooted in his allegation that the defendants' conduct was objectively unreasonable because they failed to protect the plaintiff. Id. at 6-7. The plaintiff contends that, based on the facts before the court, Girson was/is a seriously mentally ill inmate with a "well known history of assaulting both inmates and staff. Specifically, he was notorious for assaulting other inmates with a milkshake, a repulsive cocktail of urine, feces, saliva and semen allowed to ferment for several day sometimes, then deployed by tossing it into the [ ] face and body." Dkt. No. 8 at 7. The plaintiff goes to state:

> [The plaintiff] alleged that Briggs, and Doe 1-3, who were a jail captain and others "who were empowered to but failed to prevent further attacks of the sort complained of herein though they were fully aware of [Girson's] propensity to commit them," "were aware [as late as] March of 2020 that inmate Girson had recently assaulted and were likely to assault again another inmate [ ] via milkshake." ECF No. 1 at ¶¶8, 10. And that despite the precaution of locking other inmates in their cells while Girson attended dayroom to prevent him from having physical contact with other detainees, such

5

> precautions have proven "ineffective" because deploying a milkshake does not require physical contact or for both inmates to be in a common open area. (Id. at ¶¶10, 13-14.) [the plaintiff] further alleged that rather than take true reasonable steps, they "even put him in a GP unit where he would have more opportunities to visit these reprehensible attacks upon other inmates." Id. at ¶23.

Dkt. No. 8 at 8. The plaintiff also states that the court erred in stating that if staff had complied with the restrictions, Girson would not have been able to return his cell. Id. at 10. According to the plaintiff, he "never alleged that Girson was prohibited from re-entering his cell during his dayroom" and if he had "been prohibited from entering his cell, the cell door would have been locked and closed." Id.

In the complaint, the plaintiff alleged that Briggs housed the plaintiff on unit 4b "as it did not have a computer accessible to inmates and plaintiff had recently damaged unit computers." Dkt. No. 1 at ¶11. He alleged that when he arrived on the unit in early March, Girson "was allowed out of his cell for 1 hour daily during which time he was not allowed to socialize or have physical contact with other prisoners given his assaultive nature." Id. at ¶13. The plaintiff also alleged that "all unit 4b inmates were required to be locked in their cell while inmate Girson was out of his cell." Id. He further alleged that the "precaution was ineffective and fail[ed] to account for Girson's propensity to deploy milkshakes against others[]" and that "approximately one week prior to the assault on the plaintiff, Girson had assaulted the plaintiff's neighbor with a milkshake and the plaintiff witnessed this assault and the indifference of MCJ staff to such assaults." Id. at ¶14.

6

The plaintiff claims that Briggs and John Does 1-3 were aware of Girson's propensity to assault others with milkshakes but took no reasonable steps to abate the risk to which his behavior subjected the plaintiff and other incarcerated individuals. Dkt. No. 1 at ¶23. He also claims that they turned a blind eye to the risk and, in placing Girson in a general population unit, they put in place no measures to address the intolerable risk of serious harm to others that Girson posed. Id.

The plaintiff has not shown that the court erred in its determination that he failed to state a claim against Briggs and John Does 1-3. To state a failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege:

> (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

Thomas v. Dart, 39 F.4th 835, 841 (7th Cir. 2022) (citing Kemp v. Fulton Cty., 27 F.4th 491, 496 (7th Cir. 2022)).

The plaintiff has not alleged that Briggs or Does 1-3 placed Girson in general population. And while the plaintiff alleges that Briggs placed *the plaintiff* in general population, he also alleges that there was a procedure in place to address the risk that Giron's placement in general population posed. While the plaintiff states that the precautionary measures were inadequate

7

because Girson deployed a milkshake on the plaintiff's neighbor about a week before he deployed one into the plaintiff's cell, the plaintiff has not alleged that Girson or Does 1-3 were involved in creating or implementing the precautionary measures. Moreover, if staff had followed the precautionary measures and Girson had been continuously monitored for assaultive behavior while in the day room, it is not reasonable to infer that he would nonetheless have succeeded in returning to his cell, obtaining a milkshake and deploying it into the plaintiff's cell. The plaintiff has not stated a claim against Briggs and John Does 1-3.

At screening, the court allowed the plaintiff to proceed on his second cause of action against Anderson, but not against Ellison and Peterson:

> The plaintiff may proceed on his second cause of action, a failure-to-protect claim, against Anderson, based on allegations that Anderson escorted Girson to the dayroom, stopped Girson when Girson started to urinate in a milk carton, but then left the dayroom. Anderson allegedly knew of Girson's assaultive history; leaving him in the dayroom put other incarcerated persons at a substantial risk of harm. But the plaintiff has not alleged that Ellison and Peterson participated in allowing Girson to be out in the dayroom without supervision. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). Because the plaintiff has not alleged that Ellison and Peterson were personally involved in allowing Girson to be in the dayroom without supervision, he may not proceed against them on a conditions-of-confinement claim.

Dkt. No. 7 at 10-11.

In his motion for reconsideration, the plaintiff contends that the court erred in not allowing him to proceed against Ellison and Peterson on his

8

second cause of action. Dkt. No. 8 at 10. The plaintiff states that, in addition to his allegations that Anderson left Girson in the dayroom on March 13, 2020, he alleged (in the "Causes of Action" section of his complaint) that Anderson, Ellison and Peterson were "charged with monitoring the unit and specifically monitoring inmate Girson for assaultive [behavior] during his dayroom time but failed to do so. These defendants were aware that Girson had . . . a propensity to assault others with bodily fluids but allowed him to urin[ate] in a milk container, roam the unit and assault others without them inhibiting his actions." Dkt. No. 8 at 10. The plaintiff states that the fact that he placed these allegations under the "Cause of Action" section of his complaint is not important and that the court must construe his allegations liberally. Id. at 10-11. The plaintiff also states:

> Given their knowledge of Girson's history, their obvious knowledge of the precautions, their commonsense knowledge that if indiligent [sic] in their monitoring of him Girson was likely to deploy a milkshake against someone, which would subject that person to a substantial risk of serious harm, and their witnessing him preparing to do just that, it was objectively unreasonable to fail to monitor him despite noticing behavior indicative of a desire to assault another detainee but take no additional steps and instead let him roam about and re-enter his cell and alight upon Goodvine's cell to attack him.

Dkt. No. 8 at 11.

The plaintiff's motion for reconsideration includes statements about Ellison and Peterson that he did not include in the complaint. Nonetheless, the court accepts the plaintiff's allegation that Anderson, Ellison and Peterson "were charged with monitoring the unit and specifically monitoring inmate Girson for assaultive behavior during his dayroom time but failed to." Dkt. No.

9

1 at ¶25. At screening, the court did not interpret this allegation to mean that Ellison and Peterson were present in the dayroom on March 13, 2020 when Anderson escorted Girson to the dayroom and left him there which then gave Girson the opportunity to deploy the milkshake into the plaintiff's cell. Given the liberal pleading standard, however, the court will grant the plaintiff's motion for reconsideration and allow him to proceed on his failure-to-protect claim against Ellison and Peterson based on allegations that they failed to monitor Girson in the dayroom before he deployed the milkshake into the plaintiff's cell.

At screening the court did not allow the plaintiff to proceed on his third, fourth or fifth causes of action:[2]

> The plaintiff's remaining three "causes of action" relate to an alleged denial of medical care after the plaintiff was exposed to the "milkshake." A §1983 claim that a state pretrial detainee has received inadequate medical care arises under the Fourteenth Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda v. Cty. of Lake, 900 F.3d 335, 346-47 (7th Cir. 2018)). The plaintiff must allege that he suffered from an objectively serious medical condition. See Williams v. Ortiz, 827 F3d 936, 942-43 (7th Cir. 2019) (citing McCann v. Ogle Cty., 909 F.3d 881, 886 (7th Cir. 2018)). Regarding the conduct of the defendants, claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants acted purposefully, knowingly or recklessly when considering the consequences of their response to the medical condition at issue in the case. Id. (citing McCann v. Ogle Cty., Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id.

---

[2] The plaintiff does not challenge the dismissal of his fourth and fifth causes of action against Duckert and Dobson.

10

> The plaintiff's third, fourth and fifth causes of action focus on the defendants' failure to provide him with medical treatment after Girson tossed the "milkshake" into the plaintiff's cell. The plaintiff alleges that the contents of the "milkshake" went into his face, mouth, eyes, ears and nose. He states that he had to wait an hour to take a shower and for janitors to clean his cell. The plaintiff also states that he never received medical treatment for the significant exposure. He claims that when Jane Doe Nurse passed around medication, she made light of the exposure, referring to it as a "booboo" and refusing to treat him. The plaintiff also claims that the jail does not have a policy or procedure for treating incarcerated persons after significant exposures and that "best correction and medical practices dictate that inmates exposed to such exposures should be treated for significant exposures[.]" Dkt. No. at ¶28.
>
> The plaintiff has not stated an inadequate medical care claim because he has not alleged that the significant exposure resulted in his having a serious medical need. The court suspects the plaintiff assumes that the exposure itself qualifies as a serious medical need. But "[a] medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" Roe v. Elyea, 631 F.3d 843 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). The plaintiff implies that about an hour after the exposure, he took a shower and his cell was cleaned; he does not allege that he suffered any adverse effects from the exposure (such as infection or illness). This means the plaintiff has not stated a plausible claim for relief based on inadequate medical care. The plaintiff may not proceed on his third, fourth and fifth causes of action.

Dkt. No. 7 at 11-13.

The plaintiff contends that the court erred in its analysis of his third cause of action because "it is remiss in its understanding of what qualifies as a serious medical need." Dkt. No. 8 at 13. The court agrees that the plaintiff has stated a claim for relief based on allegations that he had to sit in his cell for

11

over an hour with the fluids from the milkshake on him and in his cell, that Peterson failed to obtain medical care and that Nurse Jane Doe refused to provide him treatment. See Vinnng-El v. Long, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases that clearly establish that holding an inmate in a cell smeared with feces creates an excessive risk to health); Powers v. Snyder, 484 F.3d 929, 932-33 (7th Cir. 2009). The plaintiff alleges that his health was endangered because of the exposure to the milkshake and, at this early stage, he may proceed on his medical care claim against Peterson and Nurse Jane Doe based on allegations that he had to wait an hour until the milkshake contents were cleaned off him and his cell, Peterson failed to obtain medical care for him and Nurse Jane Doe refused treat him.

The court **GRANTS IN PART AND DENIES IN PART** the plaintiff's motion for reconsideration. Dkt. No. 8. The court grants the plaintiff's motion for reconsideration as to his second cause of action against Peterson and Ellison and his third cause of action against Nurse Jane Doe and Peterson. The court denies the plaintiff's motion for reconsideration as to his first cause of action against Briggs and John Does 1-3.

The court **DIRECTS** the Clerk of Court to update the docket to reinstate defendants CO Peterson, CO Ellison and Jane Doe Nurse.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the complaint and this order to Milwaukee County for service on defendants Peterson and Ellison. Under the informal service agreement, the court **ORDERS** that defendants

Peterson and Ellison shall file a responsive pleading to the complaint within 60 days.

Dated in Milwaukee, Wisconsin this 30th day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**